Bethlehem Shipbuilding Corporation, Ltd., employer, d. b. a., *vs.* James F. Mullen, claimant, p. b. r.

1. Master and Servant—Industrial Accident Board Authorized to Adopt Rules Requiring Written Notice and Statement.

Under the express provisions of the Workmen's Compensation Law of 1917 (*Rev. Code* 1915, § 3193w, as amended by 29 *Del. Laws, c.* 233), the Industrial Accident Board had full power and authority to adopt proper rules regulating matters of procedure before it, including rules requiring written notice and a statement giving necessary information upon a prescribed form.

2. Master and Servant—Rule Requiring Written Notice to Industrial Accident Board has Force of Law.

Under *Rev. Code* 1915, § 3193w, as amended by 29 *Del. Laws, c.* 233, authorizing the Industrial Accident Board to make its own rules of procedure, such rules, when proper and reasonable, have the force and effect of law, and notice of claim must be in writing as provided by such rules, though the statute only requires notice, and does not require it to be in writing.

3. Master and Servant—Rules of Industrial Accident Board Effective When Recorded in Minute Book.

The entering of written rules adopted by the Industrial Accident Board under *Rev. Code* 1915, § 3193w, as amended by 29 *Del. Laws, c.* 233, in its minute book, was a sufficient publication of them, and it was not essential to their force and validity that they should be printed and posted and copies furnished to interested persons.

4. MASTER AND SERVANT—IGNORANCE OF INDUSTRIAL ACCIDENT BOARD'S RULES DOES NOT EXCUSE LITIGANT FROM COMPLIANCE.

Ignorance of the existence of rules properly and legally adopted by the Industrial Accident Board and published by recording will not excuse a litigant before the Board from compliance with the provisions of such rules.

5. MASTER AND SERVANT—CONVERSATION WITH SECRETARY OF BOARD NOT SUFFICIENT NOTICE OF CLAIM FOR COMPENSATION.

Under the rules of the Industrial Accident Board requiring notice of claim to be made in writing, a claimant's visit to the offices of the Board and a talk with its secretary about his condition was not notice, especially where he did not go there for the purpose of giving notice and did not indicate that he desired to make a claim for compensation.

6. MASTER AND SERVANT—PAYMENTS HELD NOT "COMPENSATION" EXTENDING LIMITATIONS.

Where an injured employee was informed that the employer considered he was not entitled to compensation, he should have notified the employer at the time that he looked upon payments made by the employer to enable him to go away for his health as compensation, and, when he did not do so, such payments must be considered as gratuities, and not as compensation within *Rev. Code* 1915, § 3193v, as amended by 29 *Del. Laws, c.* 233, providing that the period in which claims shall be barred shall be computed from the last payment of compensation, especially where it did not clearly appear from the evidence that the employee looked upon the payments as compensation.

7. MASTER AND SERVANT—ALL PAYMENTS BY EMPLOYER DO NOT EXTEND LIMITATIONS.

Under *Rev. Code* 1915, § 3193v, as amended by 29 *Del. Laws, c.* 233, providing that claims for compensation shall be barred unless within one year the parties shall have agreed upon compensation or appealed to the Industrial Accident Board, but that, where payments of compensation have been made, such limitation shall not take effect until one year from the last payment, it is only payments of compensation, and not all payments by the employer, that extend the time.

8. MASTER AND SERVANT—STATUTE DESIGNATING MEDICAL SERVICES AS COMPENSATION INAPPLICABLE TO SERVICES FURNISHED BEFORE IT BECAME A LAW.

If *Rev. Code* 1915, § 3193tt, as amended by 29 *Del. Laws, c.* 233, and amended by 32 *Del. Laws, c.* 186, defining "compensation" as including surgical, medical, and hospital services, medicines, and supplies, stamps upon all medical services the character of compensation, within *Section* 3193v, as amended by 29 *Del. Laws, c* 233, as to the time within which claims are barred, it was not binding where it became a law subsequent to an injury and after the employer's physician had ceased to treat the employee, as it materially changed the law, and was not merely declaratory of the existing law.

9. MASTER AND SERVANT—WHETHER PAYMENTS ARE COMPENSATING WITHIN STATUTE OF LIMITATIONS QUESTION OF FACT.

Whether payments by an employer are or are not compensation within *Rev. Code* 1915, § 3193v, as amended by 29 *Del. Laws, c.* 233, relative to the time within which claims are barred, is a question of fact to be determined from the evidence.

*(January* 25, 1922.)

PENNEWILL, C. J., RICE and HARRINGTON, J. J., sitting.

*William S. Hilles* for defendant below, appellant.

*Robert G. Harman* for claimant below, appellee.

Superior Court for New Castle County, November Term, 1921.

Appeal from an award of the Industrial Accident Board, dated June 28, 1921, No. 159, May term, 1921.

James F. Mullen, the claimant was employed by the Bethlehem Shipbuilding Corporation, Limited, the appellant, and on the 1st day of October, 1919, was injured by a fall at his place of employment. He gave immediate notice of the accident and was examined and cared for at that time and from time to time thereafter by Dr. Robinson, the company's physician. He returned to work about October 4, 1919, and with some interruptions (in June, 1920, claimant had an attack of pleurisy, lasting about six weeks) continued in his employment until Saturday, September 18, 1920, when he went away for ten weeks. In the month of September, 1920, and prior to his going away, the company's physician sent him to one Dr. Burns to have him take an X-ray picture of his spine. At the time he went away, he was given $100 by the company, and his wages were paid to his wife during his absence. There was no agreement that these services were rendered or that the moneys paid him were paid as compensation. On the last day of November, 1920, he returned to work and continued until March 28, 1921, when, with others, he was discharged for lack of work. He called at the offices of the Industrial Accident Board early in September, 1920, and had a talk with the secretary of the Board, but filed no written application for a hearing. On the 18th day of April, 1921, he made a claim in writing to the Board for compensation.

On January 3, 1919, the Board adopted rules of procedure and recorded them in the minute book; among the rules adopted and recorded at the time were rules 1 and 4. *Rule* 1, in substance, provides that when an injured employee shall fail to reach an agreement with his employer in respect to compensation, either party shall notify the Board in writing, and sets out a form which the notifying party could, but was not expressly required to, follow. This form provides for a statement that the injured employee and the employer are unable to reach an agreement with respect to compensation, and requests a hearing by the Board. When the written notice is filed, the party giving notice is required by the provisions of rule 4 to file with the Board a statement giving necessary information upon a form furnished by the Board.

3193tt, *Section* 139a, amending the Compensation Act by providing that the word "compensation" shall be held to include medical services, etc., did not become a law until April 1, 1921, 32 *Del. Laws, c.* 186.

The Board made an award in favor of the claimant, Mullen. The Bethlehem Shipbuilding Corporation, the employer, appealed and filed the following causes of appeal:

1.   That the said James F. Mullen did not appeal to the Industrial Accident Board within one year after the accident as provided in the Delaware Workmen's Compensation Law, the parties not having agreed upon the compensation as provided in the said Law.

2.   There is no evidence which would justify the conclusion of the Industrial Accident Board that payments of compensation had been made by the appellant to the appellee within one year from the time of the filing of the said claims for compensation with the said Industrial Accident Board.

3.   That the Industrial Accident Board was not warranted or justified from the testimony in holding that the sending of Mullen to Dr. Burns on or about September 14th, 1920, the giving of one hundred dollars to assist him to get away, the payment of sums of money equivalent to full wages during the period he was away from September 18 to November 27, 1920, were all payments of compensation within the meaning of the last sentence of 3193v, *Section* 115, of the Delaware Workmen's Compensation Law of 1917.

4.   The Industrial Accident Board of the state of Delaware was in error in holding that the limitation of one year did not take effect until November 27, 1921.

5.   The Industrial Accident Board, was in error in overruling defendant's objection to the jurisdiction of the said Board upon the ground that the claim for compensation filed by the said claimant was not forever barred by the

32 Del.]        Beth. Ship. Corp. vs. Mullen        59

Opinion.

provisions of the Delaware Workmen's Compensation Law of 1917 (29 *Del. Laws, c.* 233).

Other facts appear in the opinion of the court.

Rice, J., delivering the opinion of the court:

The appellant contends that the claimant did not comply with the provisions of the statute and the rules of the Industrial Accident Board, in that he did not, within one year after the date of the accident, notify the Industrial Accident Board, in writing, of his failure to agree with his employer in regard to compensation for his injuries, and apply for a hearing.

The claimant contends that he verbally notified the Industrial Accident Board of his claim, in August, or early in September, 1920, following the accident on October 1, 1919; that such notice was a legal notice, and if the rules of the Board provided for notice in writing, they were not binding upon the claimant, for the reason that they had not been promulgated, published or made known to the public or to the claimant. It is also claimed in his behalf that compensation was made to him by his employer within one year prior to the filing of the written notice with the Board, on April 18, 1921, and that the limitation of one year did not end until after the expiration of one year from the time of said payments made by the employer to the claimant.

In determining the questions presented, it will be necessary to consider the following sections of the *Revised Code* of 1915 and rules of the Industrial Accident Board:

"3193*o*. *Section* 108. If the employer and the employee, or his dependents in case of his death, fail to reach an agreement in regard to compensation under this article, or if, after they reach such an agreement, the Industrial Accident Board shall refuse to approve the same, either party may notify the Industrial Accident Board of the facts, and the said Board shall thereupon, after notice of the time and place of hearing served on all parties in interest, hear and determine the matter in accordance with the facts and the law, and state its conclusion of fact and rulings of law."

"3193v. *Section* 115. In case of personal injury, all claims for compensation shall be forever barred unless, within one year after the accident, the parties shall have agreed upon the compensation as before provided, or unless, within one year after the accident, one or more of the interested parties shall have appealed to the Industrial Accident Board as in this article provided. In cases of death, all claims for compensation shall be forever barred, unless,

within one year after the death, the parties shall have agreed upon the compensation as before provided, or unless, within one year after the death, one or more of the interested parties shall have appealed to the Industrial Accident Board as in this article provided. Where, however, payments of compensation have been made in any case, said limitation shall not take effect until the expiration of one year from the time of the making of the last payment."

"3193w. *Section* 116. * * * It shall be the duty of said Board to maintain and keep open during reasonable hours, an office adequate for the transaction of its business. It shall keep a record of all its proceedings and such other books and records as shall be required by the proper and efficient administration of this article.

"It shall hear disputes as to compensation to be paid under the provisions of this article, make its own rules of procedure for carrying out the provisions of this article, furnish blanks for information, record all awards, and shall have power to compel the attendance of witnesses. * * *"

The workmen's Compensation Law was amended April 1, 1921, by adding the following section (a):

"3193tt. *Section* 139a(a). That the term 'compensation' wherever used in this act, and wherever the context requires it, shall be held to include surgical, medical and hospital services, medicines and supplies, and funeral benefits, provided for in this act."

The only rules of the Accident Board that need to be considered are:

"Rule 1. Whenever an injured employee and his employer shall fail to reach an agreement in regard to compensation, or whenever they reach such an agreement which the Industrial Accident Board shall refuse to approve, the injured employee, or his said employer, shall notify the Industrial Accident Board in writing of such failure to agree, which notice may be substantially in the following form:

"To the Industrial Accident Board of the State of Delaware Sitting in and for —— County. * * *"

"Rule 4. No formal pleading or other formal statement of claim or formal answer shall be required to be filed by any of the parties but each person making written request for a hearing shall file with the secretary of the Board on forms to be furnished by the secretary, a statement giving substantially the following information. * * *"

[1] The Board decided that there had been no legal notice to it in August or September, 1920, and we agree with this finding. Rules 1 and 4 of the Industrial Accident Board were adopted in compliance with the provisions of *Section* 3193w of the *Revised Code* of 1915. This section is unequivocal in its terms, and the language is so plain that it cannot be seriously contended that the Board did not have full power and authority to adopt proper rule regulating matters of procedure before it.

Opinion.

[2] Counsel for the claimant contends that the statute provides "that either party may notify the Industrial Accident Board of the facts," and, therefore, the notice of the claim is not required to be in writing. This contention, however, can have little or no force when it is considered that the Board, by the same act, had power and authority to make rules of procedure for carrying out its provisions, and when in compliance with such authority it made a rule requiring that notices of claim be in writing. The effect of the law is to establish the Industrial Accident Board as a court to hear and determine a certain class of cases over which it is given jurisdiction, and the functions of the Board are of a judicial character. When a board with such powers is legally authorized to make rules governing matters of procedure before it, and rules are made in compliance therewith, and not in conflict with organic laws, such rules, when proper and reasonable, have the force and effect of a law.

[3, 4] Counsel for claimant argues that the rules, if authorized, are not binding upon the claimant because they were not promulgated, published or made known to the public or to Mullen. The rule in question were in writing, regularly and officially adopted by the Board, and appear in the minute book, along with other rules adopted by it. The entering of written rules in the minute book was a publication of them, and it is not required by law that they should be posted or published in the public press to make them legally binding upon persons having business before the Board. Ignorance of the existence of rules properly and legally dposted and published by recording will not excuse a litigant before the Board from compliance with the provisions of such rules. Counsel for the claimant cited no authorities in support of his contention, and the court has been unable to find any authority requiring more in the adoption and publication of rules, than was done by the Board in this case. While it would be better practice to print and post the rules, and furnish copies to interested persons requesting them, yet it is not essential to their force and validity that this be done.

[5] It is urged that the visit of the claimant to the offices of

the Industrial Accident Board, and his talk with its secretary, was notice by the claimant to the Board. We cannot agree with this contention, for the reason that we have already held that the rule requiring notice to be in writing is valid and binding on the claimant. Mullen did go to see the Secretary of the Board at his office, in August or September, 1920, ten or eleven months after the accident, but there is nothing in the evidence to show that he went there for the purpose of giving notice of his claim. While .it is true that he talked over his condition with the secretary, yet it does not appear that he indicated to the secretary in any way that he desired to make a claim for compensation.

The next question presented is one of considerable importance generally to employee and employer. It is contended that the claimant is not barred from presenting his claim to the Industrial Accident Board more than a year after the date of his injury, because he had received compensation from the employer within a period of one year prior to filing his claim in writing with the Board, on April 18, 1921. Mullen claims that the payment of the $100 and the eleven weeks' wages by the company to him, and the medical services by the company's physician, were compensation, and if this claim should be held to be a correct one, then the claim would not be barred for the reason that a year had not elapsed between .the time of the last payment and the filing of his claim. The Board held the payments and medical services to be compensation, and supported its finding by the case of *J. Wallace Chase v. Emery Manufacturing Company, Court of Common Pleas of Clearfield County*, Department Reports of Pennsylvania, January 19, 1921. From a careful examination of that case we are of the opinion that it is not an authority in support of the finding of the Board that the payments in question were made as compensation. In the Pennsylvania case the court held it to be a question of fact whether or not the injured employee had received compensation from his employer, and quoted some of the testimony of claimant and employer. The claimant testified that he had received said payments as compensation, and the employer testified that the payments had been made to the claimant as

compensation.   The court, in deciding this branch of the case, said:

"This evidence is absolutely without contradiction, and if the testimony of two reputable men cannot be taken as definitely establishing this claim, it is difficult to understand what volume of proof would be necessary."

We are of the opinion that the court in that case correctly he'd that whether or not payments had been made as compensation, was a question of fact to be determined from the evidence, and we fail to see how, under the evidence in the case, it could have been held otherwise than that the payments were made as compensation, for it clearly appears that the payments were made and received as such, and this fact was clearly understood by employer and employee.

The question whether payments made by an employer to an injured employee are made as compensation being a question of fact, it will be necessary to consider the evidence. .

Following is a brief statement of the testimony of the witnesses upon this point:

The claimant testified that immediately after the injury he was taken to the dispensary of the company, where Dr. Robinson, the company's physician, treated him;   that Dr. Robinson also treated him from time to time thereafter and in September, 1920, sent him to Dr. Burns to have an X-ray photograph of his spine taken;   that he did not have any agreement with the company for compensation, and when he went to Mr. Reissman, the compensation administrator of the company,   Mr. Reissman told him he was not entitled to compensation;   that his own doctor, having advised him to go to the mountains for his health, he went to Mr. Germain, the general manager, and told him that he needed financial assistance to go away as the doctor advised him;   that Mr. Germain told him that the company would give him $100 and pay him wages while away;   and that he did not know anything about compensation, though he now considers that the medical services, the $100 and the money paid to him for eleven weeks were compensation.

Augustus Reissman, the company's compensation adminis-

trator, testified that the money paid to Mullen was paid as a
gratuity or gift and not as compensation, and was not charged on
the books of the company as compensation.

John P. Faherty testified that the money paid to Mullen was
treated by the company and carried on its books the same as if
he had been working; and that it was customary for the company
to pay its employees, who were prevented from working on account
of illness, the same as if they had been working.

[6,7] From an examination of the record it, therefore, appears
that Mullen, at the time the payments in question were re-
ceived, did not consider the nature of the payments, but
was told by Mr. Reissman, of the company, that he was not
entitled to compensation.  However, he now considers that the
payments were made as compensation.  On the other hand, the
company's representatives testified that the company had not
made the payments to Mullen as compensation and had not so
charged them on the books of the company.  How can it be said that
the payments in question were made as compensation, when the
employee knew at the time they were made that the employer
claimed that he was not entitled to compensation?  Having been
informed that the company considered he was not entitled to com-
pensation, he was charged with the knowledge of that fact,
and if he looked upon them as compensation, he should have
so notified his employer at the time.  Moreover, it does not
clearly appear from the evidence that the employee, at the
time of the payments looked upon them as compensation.
He testified that he knew nothing about compensation at the
time, and went to the company for financial assistance to re-
store his health, and made no claim for assistance as some-
thing to which he was justly or legally entitled.  Under the facts
of this case, the payments made by the company must be con-
sidered as gratuities, and not as compensation, unless the law im-
presses the stamp of compensation upon all payments made by
an employer to an injured employee.  We are of the opinion that
such is not the effect of the law.  The word "payments" in the estate
is limited by the words "of compensation," and it would not be

reasonable construction of the statute to say that payments of all kinds should be considered as compensation, for to so construe the law would be to give little or no meaning to the words "of compensation," and it cannot be presumed that the Legislature did a useless thing when what they did do can be given a useful purpose and meaning by a fair and reasonable construction.

[8] The Board in its opinion placed considerable importance upon the provisions of *Section* 3193tt, *Section* 139 (a), which was passed as an amendment to the Workmen's Compensation Law on April 1, 1921. If the effect of this is to fix the stamp of compensation upon all medical services furnished an injured employee by his employer, and we do not hold that it does, it would not be binding in this case for the reason that the amendment became a law subsequently to the injury to Mullen and after the company's physician had ceased to treat him. If the effect of the amendment should be as stated by the Board, then it must be considered as a material change in the then existing law, and not merely declaratory of the law as it existed prior to its enactment.

[9] Under our view of the law, whether payments are or are not compensation is a question of fact to be determined from the evidence, and we have already stated it to be our opinion that it is established by the evidence that the payments and medical services in question were not compensation.

For the reasons stated, the award of the Industrial Accident Board, made on the 28th day of June, A. D. 1921, that the Bethlehem Shipbuilding Corporation, Limited, pay to James F. Mullen compensation for his injuries, is hereby reversed.

It is ordered that a copy of this opinion be filed in the prothonotary's office of this county and a certified copy sent to the Industrial Accident Board. The costs are hereby taxed against the Bethlehem Shipbuilding Corporation, Limited, the appellant.