### No. 2781
### Second Circuit

**GOODWIN v. STANDARD OIL CO. OF LA.**

(Nov. 6, 1926.  Opinion and Decree.)
(Nov. 20, 1926.  Rehearing Refused.)

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Master and Servant —Par. 160 (g).**
The interruption of prescription provided for by Section 31 of Act 20 of 1914 and amendments, the Workmen's Compensation Law has reference to payments of compensation made under the act and is not interrupted by annuities and benefits paid the injured employee after the accident.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo.  Hon. F. X. Ransdell, Judge.

Action by John J. Goodwin against Standard Oil Company of Louisiana.

There was judgment for plaintiff and defendant appealed.

Judgment reversed and plea of prescription sustained.

Long & McSween, of Shreveport, attorneys for plaintiff, appellee.

T. M. Milling; F. L. Hargrove, of Shreveport, attorneys for defendant, appellant.

ODOM, J.   Plaintiff brought this suit under the Workmen's Compensation Act (Act 20 of 1914 and amendments) claiming full compensation for 400 weeks for an injury alleged to have been received while engaged in work for the defendant.

The defendant answered, denying liability to any extent and especially alleged that it had no knowledge of an injury to plaintiff while he worked for it and that the first knowledge it had that plaintiff claimed to have received such injury was when the suit was filed and service made.

During the progress of the trial the defendant filed a plea of prescription of one year which it urges as a bar to plaintiff's suit.

There was judgment in the lower court for plaintiff as prayed for and defendant prosecutes this appeal.

### ON THE PLEA OF PRESCRIPTION

The plea of prescription is based upon Section 31 of Act 20 of 1914, which reads as follows:

"That in case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the injury or death the parties shall have agreed upon the payments to be made under this act, or unless, within one year after the injury proceedings have been begun as provided in Sections 17 and 18 of this act. Where, however, such payments have been made in any case, said limitations shall not take effect until the expiration of one year from the time making the last payment."

Plaintiff filed this suit on August 26, 1925.

In his petition he alleged that he received the injury of which he complained and which he claims disabled him—

"* * * in the month of August, 1924, petitioner being unable to supply a more definite date."

As a witness in his own behalf, plaintiff was asked to fix the date on which he was injured and he said:

"Somewhere near the first of August." (Page 24 of the evidence.)

Doctor G. H. Cassity, a physician called by plaintiff, stated (page 36 of the testimony), that he examined plaintiff on January 21, 1926, the day before the trial, and was asked to state his findings and he said, among other things—

"He (referring to plaintiff) claims to have sustained an injury on or about August 1st by lifting a tractor wheel."

Plaintiff took the testimony of Floyd Adkins and Clyde Musgrove who had worked for defendant along with plaintiff, but they could not fix the date of the alleged injury, although Adkins was asked: "Do you recall working with him on or about the latter part of August, 1924?" and he said: "Somewhere along in there. I don't know just what time." On cross-examination he said: "As well as I remember it must have been in August, but I don't remember for sure."

Plaintiff, as stated, in his testimony fixed the date at about the first of August, 1924, and on the day before the trial gave Doctor Cassity the same date. As the suit was not filed until August 26, 1925, more than one year elapsed between the date of the alleged injury and the date on which the suit was filed.

Under section 31 of the act the plea of prescription is good, unless the parties within one year after the accident "agreed upon the payments to be made under this act", and there is no contention that such was done, or unless the limitation of one year as fixed in the act for bringing such actions has no effect on account of payments made by defendant as provided in the last sentence of section 31 thereof, which reads as follows:

"Where, however, such payments have been made in any case, said limitations shall not take effect until the expiration of one year from the time (of) making the last payment."

It is undisputed, in fact, proof administered by defendant shows, that a number of payments were made by defendant to plaintiff after the date on which he claims to have been injured, the last of these payments being made as late as November 20, 1924, or nearly three months after the suit was filed.

Counsel for plaintiff contend that the limitation of one year as prescribed in the statute, did not take effect until one year

from the time of making this last payment.

If defendant intended to make these payments to plaintiff as compensation under the Workmen's Compensation Act for disability caused by an injury which it knew plaintiff has suffered while in its employ and said payments had been so received by the plaintiff, the position taken by counsel is unquestionably well founded. But it is also true that payments not so intended by the employer and not so received by the employee do not have the effect of prolonging the period for bringing such actions under the statute. It provides that in cases of personal injury all claims are barred unless within one year after the injury the parties shall have agreed upon the payments to be made under this act or unless within one year after the injury proceedings have been begun under sections 17 and 18 of the act. Then follows the sentence which provides that—

"Where, however, such payments have been made",

that is, payments for personal injuries and payments "made under this act", the limitation shall not take effect, etc.

The words "such payments", used in the second sentence of the section, refer to payments made under this act as set forth in the first sentence of the section.

Payments of compensation made by an employer to an employee according to the schedule laid down in the act, with knowledge of the injury and resulting disability, are in the nature of admissions of liability under the act. But the payment of a sum of money by the employer to his employee is not necessarily a payment of compensation under the act.

Plaintiff, in support of his contention, cites the case of Johnson vs. Vernon Parish Lumber Co., 151 La. 664, (92 South. 219).

In that case the court found that subsequent to the injury complained of by the plaintiff the defendant had made six payments to the injured employee, and said:

"These payments are in the nature of admissions that plaintiff is entitled to compensation under the Employers' Liability Act."

But this holding was predicated upon a finding by the court that the payments were made to cover the period of disability resulting from the accident, for its said:

"Defendant company admits in its answer that plaintiff received six payments of $16 each, and alleges that this covered his period of disability resulting from the accident."

In the case of Moore vs. Louisiana Oil Refining Corporation, decided by us and reported in Number 12, page 417 of the Louisiana Courts of Appeal Reports, the plaintiff's wife, after the alleged injury and while her husband was in bed sick, went to the manager of the company and asked for aid, stating that her husband was in bed and that the family was without means. Whereupon she was paid $80, because it was the policy of the company to render assistance to its employees in times of need.

It was there contended that this payment was an admission of liability, but we held that under the circumstances it was not such an admission.

It is clear, we think, that where it is contended that payments made by the employer to the employee prolong the period fixed in the statute for bringing an action to recover compensation, such a plea will avail the plaintiff nothing unless it be clearly shown that such payments were made as compensation under the act.

Such is the holding of courts of other jurisdictions.

Bartholemu Shipping Corp. vs. Mullins, 119 Atl. 314.

Chase vs. Emery Mfg. Co., et al., 113 Atl. 840.

Ohio Oil Co. vs. Industrial Commission, et al., 127 N. E. 743.

Ashley Iron & Mining Co. vs. Fowler, et al., 271 S. W. 590.

Hunt vs. Industrial Accident Commission, 185 Pac. 215.

Pathe Exchange, Inc., vs. Court of Common Pleas, 129 Atl. 468.

It therefore remains to be determined whether the payments made in this case by the defendant to the plaintiff were made as compensation under the act.

The testimony discloses that plaintiff at no time filed a claim for compensation with the defendant, nor did he notify the company that he had been injured, although it is shown that he knew it was customary for injured employees to file such formal notice and make such demand. He had worked for the company for some two or three years prior to this time and on other occasions had filed such notices.

The testimony that the company had no knowledge of the alleged injury at the time the payments were made is not disputed.

Plaintiff testified, however, that he told Mr. Thompson, his "boss-man", that he had been injured. Mr. Thompson died previous to the trial.

Plaintiff's explanation as to why he did not make out an accident report is as follows:

"Mr. Thompson, my boss-man, come and advised me not to make out an accident report and he would carry me on the sick list until the doctor told me I could go back, then I could do light work, would give me light work, so that I could make a living for my family." (Page 57 of the evidence.)

The defendant company has a plan called "Annuities and Benefits" plan, commonly referred to as "A. & B." plan, under which it pays its employees who are disabled by sickness. For the first four weeks of disability caused by sickness it pays them full wages or salary; for the next twelve weeks it pays them one-half their wages or salary. It was under this plan or arrangement that the payments were made by defendant and accepted by plaintiff.

Plaintiff testified that he was injured about the first of August, that he was in bed some two or three days, and did not pretend to do any work for about ten days or two weeks, although, he says, he was paid full time for that period. After the alleged injury he went back to work in the repair shop and did light work. Just how many days he did this kind of work is not definitely shown, but it is in evidence that he was carried on the rolls as an employee and as sick until November 15, when he voluntarily resigned his position to take up work as a life insurance agent.

Plaintiff was receiving a salary of $135.00 per month.

The payments which were made to him subsequently to his alleged injury were as follows: $65.32 on August 16, 1924, covering the period of two weeks prior to that date and was full time for his services and three days while sick; $53.32 paid September 5, 1924, which was for all services for two weeks, but there was a deduc-

tion of $11.00 for house rent and lights; $67.50 paid September 16, 1924, for full time services and five days while sick; $56.50 paid on October 6, 1924, for full time services from September 16, to September 30, and one day sick; $47.90 paid on October 20, 1924, for four days full time services and three days half time; $23.84, covering the last half of the month of October for half time, being reported sick for the entire period; and $23.75 half time for two weeks up to November 15.

These payments correspond to the amounts which plaintiff was entitled to under the Annuities and Benefits plan and do not correspond to the amount which he would have been due as compensation under the act.

All these payments were made under the Annuities and Benefits plan. There is no suggestion that they were made as compensation under the act and, as stated, the defendant had no knowledge until the filing of this suit that plaintiff claimed to have been injured by accident while in its employ.

For the reasons assigned it is ordered, adjudged and decreed that the judgment appealed from be reversed and avoided and that defendant's plea of prescription be sustained and plaintiff's suit dismissed at his cost.