ESSEX COUNTY COURT OF COMMON PLEAS.

MAX FISCHBEIN, PETITIONER-APPELLEE, v. REAL ESTATE MANAGEMENT, INC., AND COMMERCIAL CASUALTY INSURANCE COMPANY, RESPONDENTS-APPELLANTS.

Decided April 1, 1943.

For the petitioner-appellee, *David Roskein* (*Harry Cohn*).

For the defendants-appellants, *Henry M. Grosman* (*Isidor Kalisch*).

HARTSHORNE, C. P. J. The issue here is whether payments by the employer to the employee toll the two-year statutory bar (*R. S.* 34:15-51), such payments having been in an amount equal to the employee's wages previous to the accident and paid weekly, as the wages were. Nor has this issue been previously decided in New Jersey under the present statute; while in other jurisdictions, the decisions are variant, due both to differences in the statutes themselves, in the philosophic approach thereto, and in the facts.

We turn to the facts, so far as they bear on such issue, it being substantially agreed on all sides that an accident occurred, of which the employer had notice. Petitioner-appellee, the employee, a man of fifty-four, had for some years been branch manager of the respondent-appellant-employer's real estate business in Newark, his work being both in the office and outside, including the physical inspection of numerous apartment houses and other buildings managed by his employer. On April 17th, 1939, while making

such inspections, in walking up a four-story, walk-up apartment, he suffered a heart attack, which recurred shortly thereafter while he was performing similar duties. This was diagnosed as an acute coronary occlusion, from which he has never recovered and was probably an aggravation of a pre-existing latent condition.

After an extended absence from work, he attempted to resume some of his duties, but was only able to work an hour or so a day until January, 1941, when his condition became so acute that he was ordered by his doctor to remain away from work entirely, and he went to Florida to regain his health. There he suffered a relapse, was compelled to return to Newark, and remained in bed for several months. Subsequently, he was able again to work intermittently for a brief period each day until January 30th, 1942, when he was discharged by his employer. During all this period his employer continued to pay him regularly each week an amount equal to his previous weekly salary, and on occasion, certain additional amounts for certain minor, extra services. (Record, page 73.)

Since the accident occurred almost three years before the petition was filed, the petition is out of time, unless the above payments constitute "an agreement for compensation * * * between the employer and the claimant," as statutorily defined. For, a petition "filed within two years after the failure of the employer to make payment pursuant to the terms of such an agreement" is timely. (R. S. 34:15-51.) It is settled that the "compensation" referred to in such section means statutory compensation, not the compensation or remuneration which is paid for services performed. *Pathe Exchange* v. *McGovern*, 3 *N. J. Mis. R.* 652; 129 *Atl. Rep.* 468; affirmed, 102 *N. J. L.* 443; 131 *Atl. Rep.* 923; *Betsy Ross Ice Cream Co.* v. *Greif*, 127 *N. J. L.* 323; 22 *Atl. Rep.* (2d) 571.

In *DuPont Co.* v. *Spocidio*, 90 *N. J. L.* 438; 101 *Atl. Rep.* 407, it was held that where the employer, after an accident to his employee, continued to pay the latter substantially half his weekly wages, such payments evidenced an implied agreement between the two as to the payment of the statutory

compensation. But in 1918, shortly after this decision, this section of the act was changed, and it was thereafter held that, in the light of the statute as amended, the only agreement as to compensation, which would toll the statutory bar, was a formal written one, not the mere informal one which existed in the Spocidio case. *Pathe Exchange* v. *McGovern, supra.* After the rendering of this latter decision, and in an evident desire to liberalize the situation, the statute, as amended in 1918, was further amended to provide that: "Any payment made in accordance with the provisions of article 2 of this chapter (*R. S.* 34:15-7, *et seq.*) shall constitute an agreement for compensation." (*Pamph. L.* 1931, *ch.* 280, *p.* 708, § 1.) (*R. S.* 34:15-51.)

It would thus seem that our legislature in 1931 determined to make the law revert to its status as defined in the Spocidio case, to wit, that the payment by an employer of half wages to an injured employee, who was laid up by such injury, should be considered to be an agreement for statutory compensation sufficient to toll the statutory bar. Nor is *Randolph* v. *Hamersley Manufacturing Co.,* 94 *N. J. L.* 530; 111 *Atl. Rep.* 15, to the contrary. For the Randolph case "was decided before many of the [statutory] changes above noted" (*Betsy Ross Ice Cream Co.* v. *Greif, supra*), and specifically before the enactment of the amendment which made "payments" in accordance with the statute sufficient to toll the statutory bar. In addition, the wages paid in the Randolph case were strictly wages, as they were paid solely while the employee was working.

But respondent employer argues that the rule in the Spocidio case does not apply in view of the latest statutory amendments and of the fact that here the payments equalled the full wages, and the employee was working at least part of the time. Consequently, both sides have referred to numerous decisions of similar character throughout the country. To these we briefly refer. In California, Louisiana and Missouri, the courts seem to have laid down an extremely liberal rule, holding in practically all circumstances that the employer's payments of an amount equal to wages must be considered as payments of statutory compensation sufficient to toll the statu-

tory bar. *London Guaranty Co.* v. *Ind. Comm.,* 268 *Pac. Rep.* 670 *(Cal.)*; *Bulger* v. *Ind. Acc. Comm.,* 24 *Id.* (2d) 796 *(Cal.)*; *Morrison* v. *Ind. Acc. Comm.,* 85 *Id.* (2d) 186 *(Cal.)*; *Carpenter* v. *duPont,* 194 *So. Rep.* 99 *(La.)*; *Lawson* v. *Capital City Co.,* 52 *S. W. Rep.* (2d) 421 *(Mo.)*; *McEneny* v. *Kresge,* 62 *Id.* (2d) 1067 *(Mo.).*

On the other hand in Colorado, Delaware, Georgia, Illinois and Pennsylvania, the principle adhered to seems to be that it is a question of fact to be determined in the light of the legislative intention. *Comerford* v. *Carr,* 284 *Pac. Rep.* 121 *(Col.)*; *Bethlehem Shipbuilding Co.* v. *Mullen,* 119 *Atl. Rep.* 314 *(Del.)*; *New York Indemnity Co.* v. *Allen,* 171 *S. E. Rep.* 191 *(Ga.)*; *Marshall Field* v. *Ind. Comm.,* 137 *N. E. Rep.* 121 *(Ill.)*; *Somerton* v. *Bell Telephone,* 169 *Atl. Rep.* 579 *(Pa.)*; *Chase* v. *Emery Manufacturing Co.,* 113 *Id.* 40 *(Pa.)*; *Elkins* v. *Cambria Library,* 82 *Pa. Super.* 144.

While, as previously stated, our courts do not seem to have ruled on this question under the statute in its present form, they have, nevertheless, had occasion to construe the above statutory clause in passing on the question of whether the payment of "employee aid," otherwise than by the payment of wages or their equivalent, will constitute "payment made in accordance with the provisions of [the Workmen's Compensation Act]" so as to toll the statutory bar. And our courts have naturally, in so doing, applied the settled, liberal and remedial construction of the act by holding that such payments will be so construed under any of the following situations: (1), when medical aid was paid by the employer *(Betsy Ross Ice Cream Co.* v. *Greif, supra)*; (2), when compensation was paid by mistake under the Massachusetts act instead of under the New Jersey act *(Sweet* v. *Austin Co.,* 12 *N. J. Mis. R.* 381; 171 *Atl. Rep.* 684); (3), when compensation was paid on an erroneous mathematical basis. *(DiMoglio* v. *Slonk Construction Co.,* 121 *N. J. L.* 366; 2 *Atl. Rep.* (2d) 470; affirmed, 122 *N. J. L.* 379; 5 *Atl. Rep.* 691.) Indeed, in the last of the above cases which ruled on this section of the statute, that of *Betsy Ross Ice Cream Co.* v. *Greif, supra,* the court says: "The legislative meaning seems clear to put all kinds of employee aid on the same basis

\* \* \*. There seems no reason, if a payment be made which could have been required under the act, to limit the period in which a petition may be filed, by a judicial construction which defeats the interests of the workman."

Further, our courts have ruled on the effect of the payment of wages under other sections of the Workmen's Compensation Act. And here, the differing results definitely indicate the view of our courts that it is the facts that count in the light of the remedial legislative intention. For instance, where an employee was injured, but shortly thereafter continued to work regularly for his employer for a year and more, being paid full wages during that period, it was held that these payments were strictly the payment of wages, and not the payment of compensation under the act which could be credited on the disability award. (*De Zeng Standard Co.* v. *Pressey, 86 N. J. L.* 469; *92 Atl. Rep.* 278; *affirmed,* 88 *N. J. L.* 382; *96 Atl. Rep.* 1102. See, also, *Purcell* v. *International Motors, 91 N. J. L.* 707; *104 Atl. Rep.* 894.)

On the other hand, it has several times been held that payment of wages, or the equivalent, should be considered as the payment of statutory compensation during the periods when they were paid, so that they should be credited on the disability award under the act. For instance, in *Blackford* v. *Green, 87 N. J. L.* 359; *94 Atl. Rep.* 401; *affirmed,* 89 *N. J. L.* 357; *100 Atl. Rep.* 1069, the court had before it a case where the employer "paid the petitioner $10 a week for 41 weeks subsequent to the injury. The amount to which he was entitled under the statute was $5 a week. The defendants were credited with $5 a week for 39 weeks." In other words, the court below held that, barring the first two weeks, during which no weekly compensation was payable, one-half of the moneys paid as wages was to be considered as payment of compensation under the act, and this "although it was not questioned that he [the employee] could not earn the full 10." Our Supreme Court, in affirming the award, said, citing the *De Zeng* case, *supra*, "In so far as the money was paid for his labor, the prosecutors [employers] were entitled to no credit. In so far as it was paid from a spirit of benevolence, the same line of reasoning would be applicable and no credit

should be allowed. * * * While he [the trial judge] might have found that the subsequent payments [after the first two weeks] were made as compensation for the petitioner's labor, or as a gratuity from benevolent motives, it was a fair presumption that they were made in discharge of the legal liability, so far as there was such liability, and that payments in excess of that liability were either compensation for labor or benevolence." For it would seem but a fair presumption that payments, made by one under a legal obligation to make compensation, should be deemed made in compliance with such obligation rather than otherwise, in the absence of clear evidence to the contrary. (*Dubies* v. *Manufacturers Liability Insurance Co.*, 96 *N. J. L.* 107; 114 *Atl. Rep.* 309; affirmed, 97 *N. J. L.* 567; 117 *Atl. Rep.* 926.) In *Beach* v. *Sullivan*, 13 *N. J. Mis. R.* 582; 179 *Atl. Rep.* 847, our Supreme Court held that the payment of wages to the injured employee, so far as they were not paid by him to a substitute for the employer's benefit, were to be considered as disability compensation and credited on the award.

Of course, the fact that in all these cases the employer was contending that the payments were compensation under the act, whereas here he is contending the contrary, can make no difference. The point is that our courts have repeatedly held that the payment of wages, or their equivalent, do or do not constitute payment of compensation under the act, depending on the surrounding circumstances. And it will further be noted that the facts in the present case, except for the converse situation of the parties above stated, are essentially on all fours with those in the case of *Blackford* v. *Green, supra*. There, as here, "it was not questioned that he [the employee] could not earn the full" (amount paid). There, as here, the amounts paid far exceeded the amount of the statutory liability. Hence, the "presumption" would likewise seem "fair," here as there, that such payments "were made in discharge of the legal liability, so far as there was such liability, and that payments in excess of that liability were either compensation for labor or benevolence."

Indeed, if we follow not simply the above liberal rule laid down by so many courts in our sister states, but the principle

enunciated by our own Supreme Court in *Betsy Ross Ice Cream Co.* v. *Greif, supra,* that the payment of "all kinds of employee aid" will "extend the term to file the petition," the above "fair presumption" of fact, referred to in *Blackford* v. *Green, supra,* becomes a presumption of law, definite and final.

But even considering the presumption merely as one of fact, we find no clear and unambiguous evidence by which it is overcome. True, the employer's representative states they did not talk of accident. But the employer was told "about the entire happening of the accident" (Record, page 82), and so, must be presumed to have known that he was dealing with an accident, and that payments of wages, or their equivalent, to one who could not fully earn them, due to such accident, had been repeatedly credited by our courts as the payment of statutory compensation. True, the employer stated that he did not himself consider the payments to be compensation for an accident. (Record, page 119.) But there is no evidence that he communicated this thought to the employee, who, likewise, must not only be presumed to know the law, but was entitled to act thereon and remain quiescent, as long as statutory compensation, and more, was being paid him. True, the employer contends that the payments were made as a matter of business policy, because the employee was sick. But at the same time he admits he knew this sickness, the heart disease, occurred under circumstances which constituted an accidental disability, and yet he paid him. (Record, page 123.)

And since, after all is said and done, we are dealing with an implied "agreement for compensation," as evidenced by "a payment," it is the outward acts of the parties, not their unknown intentions which must control. Thus, in the absence of evidence that the employer communicated to the employee his intention that these payments were not to be considered statutory compensation, the "fair presumption," that they were to be treated as statutory compensation, must still control.

Indeed, considering the matter practically, any other construction would both put an unreasonable burden upon the

employee, and enable an unscrupulous employer to take unjust advantage of his employees. For if an employee is being regularly paid by his employer after an accident, not simply the statutory compensation, but double or treble that amount, and at a time when he cannot possibly render the equivalent services, he would certainly be considered an ingrate to insist upon his employer's telling him why the payments were being made, and that they were a matter of legal obligation. Indeed, such insistence would be more than apt to result in a speedy termination of his employment. On the other hand, if an employer could, by simply paying wages, or their equivalent, lull his employee into a feeling of security till after the two-year period had expired, it would be a simple matter for unscrupulous individuals, in cases of serious accidents, to escape their statutory responsibilities by the payment of a relatively paltry sum. (*DuPont Co.* v. *Spocidio, supra.*)

Hence, according to reason, authority and the spirit of the act itself, the payments by the employer here, who admittedly acted in all good faith, must be held to be payments of compensation under the act, which toll the bar of the statute. The petition thus having been filed in time, the award below which gave credit for the payments made to the extent they were statutory compensation, will be affirmed, and a determination may be entered accordingly.