John R. McCARNAN, Claimant,
Appellant Below, Appellant,

v.

NEW CASTLE COUNTY, Employer,
Appellee Below, Appellee.

Supreme Court of Delaware.

Submitted: Sept. 30, 1986.
Decided: March 4, 1987.

Jeffrey M. Weiner, Wilmington, for claimant, appellant below, appellant.

William W. Bowser, Wilmington, for employer, appellee below, appellee.

Before CHRISTIE, C.J., HORSEY and MOORE, JJ.

CHRISTIE, Chief Justice:

This is a workmen's compensation case on appeal from the Superior Court. The claimant-appellant, John R. McCarnan ("Claimant"), contends that the Superior Court erred in ruling that the statute of limitations for compensation claims, 19 *Del.C.* § 2361, barred his 1982 petition for disability compensation attributable to a 1973 injury which occurred while he was employed by the appellee, New Castle County ("County"). For the reasons explained below, we find that the claim was time barred and affirm the decision of the Superior Court.

## I.

Claimant, a police officer employed by the County, injured his right wrist on April 14, 1973 while attempting to control a suspect who was resisting arrest. The next morning, Claimant had his wrist examined, x-rayed and treated. He reported the injury to a nurse for the County on the following day, April 16. He was then put on light duty but missed no work.

After investigating the matter, the County's safety engineer reported that the injury was "definitely work related." The County nurse then completed a standard workmen's compensation form—"Employer's First Report of Injury"—and sent copies to the Industrial Accident Board ("Board") and to the County's compensation carrier at that time, Aetna Life & Casualty Company ("carrier"). The County forwarded to the carrier a single bill for $24.75 for medical services rendered to Claimant, and the carrier paid the bill.

Claimant missed no work on account of his injury during the first two years after it occurred, although the evidence indicates that his wrist continued to be painful at times. About two and a half years after his initial injury, on October 31, 1975, Claimant slipped while getting into his patrol car and re-injured his right wrist. Despite treatment and physical therapy, his condition worsened. Beginning on June 1, 1976, Claimant was hospitalized for seven days, and surgery on his wrist was performed. In June 1976, the County's new compensation carrier, Home Insurance Company, paid temporary total disability benefits to the Claimant and had him execute a receipt and an agreement as to that compensation.

Claimant's condition continued to deteriorate, and further surgery was performed in September 1980. In October 1980, Claimant and the County (which by that time had become self-insured) entered into an agreement as to compensation for total disability benefits for the period of incapacitation due to the surgery performed in 1980. The Claimant underwent a third unsuccessful surgical procedure in 1981.

In April of 1982, Claimant filed a petition with the Board seeking additional compensation due to what was by then felt to be a permanent injury. The Board found that Claimant was suffering from a twenty percent permanent partial disability to his right extremity—five percent attributable to the work-related accident in 1973 and fifteen percent attributable to the work-related accident in 1975. The Board awarded Claimant only fifteen percent disability, however, pursuant to its ruling that the payment of Claimant's 1973 medical expenses was a "minor bill" which did not bring into play the "last payment" provision of the statute which tolls the two-year statute of limitations until five years after

the last payment of compensation.[1] Applying the two-year statute of limitations, the Board ruled that any claim to recover for the five percent disability attributable to the 1973 injury was time barred.

After an appeal to Superior Court by the Claimant, the court remanded the case to the Board for a determination as to whether the original carrier acted out of "a feeling of compulsion" in paying the Claimant's 1973 medical bill. A finding on that point was deemed to be important under two cases of this Court which are examined later in this opinion. *Starun v. All American Engineering Co.*, Del.Supr., 350 A.2d 765 (1975); *New Castle County v. Goodman*, Del.Supr., 461 A.2d 1012 (1983).

At a hearing on the issue, the Board heard the testimony of a claims account supervisor for the carrier who was the senior claims representative for the Wilmington office in 1973 when the payment was made. The representative testified that the company processed "medicals only" claims without investigation because it believed that payment of a medical bill when no work was missed was not an admission of compensability. Since this case did not involve time lost from work, the bill was paid as received by an administrative person without the input of a technical claims specialist. The carrier also felt it was not compelled to pay anything until a formal agreement was signed. Crediting the testimony of the representative, the Board found that the carrier did not pay the $24.75 bill under "a feeling of compulsion." The Board adhered to its earlier decision that in the absence of an actual agreement or an implied agreement, the claim filed in 1982 for injury attributable to the 1973 accident was barred by the two-year statute of limitations.

The Superior Court affirmed the decision of the Board to deny the Claimant the five percent portion of the award attributed to the 1973 accident, but disagreed with the Board as to the reason supporting the decision. The court indicated it was persuaded by Claimant's argument that, since the carrier had a policy with the County to pay medical bills arising out of work-related injuries, the carrier felt "compelled" to make the payment it made when it paid for Claimant's 1973 examination. Therefore, an agreement between the carrier and the Claimant had arisen, and the statute was tolled until five years after the medical payment in 1973. The court concluded, however, that application of the "last payment" provision did not avail the Claimant because his 1982 petition came nine years after the last payment for the 1973 accident.

In this appeal, the Claimant first argues that this Court should affirm the Superior Court's preliminary ruling that the "last payment" provision applies so as to give the Claimant the initial benefit of the five-year limitation period. Claimant then contends that we should rule that agreements entered into in 1976 and 1980 further extended the statute of limitations under the "last payment" provision so that his 1982 filing was timely.

We hold, for reasons explained below, that the Board's finding of fact that the medical payment was not made out of a feeling of compulsion within the meaning of the applicable case law was supported by substantial evidence and not contrary to the statute or relevant decisions of this Court. Therefore, the two-year statute of limitations applied, and claims stemming from the 1973 injury were time barred as of 1975 regardless of whether agreements reached in 1976 and 1980 were intended in part to relate to the 1973 injury.

## II.

■ The evolution of the statute of limitations for compensation claims through legislative amendment indicates that payment of medical expenses by an employer or its carrier is not by itself sufficient to toll the statute. This history also demonstrates how Delaware's statute evolved to be stricter in its requirements than are

---

1. The relevant portions of the statute of limitations, 19 *Del.C.* § 2361(a) (the two-year provision) and 19 *Del.C.* § 2361(b) (the "last payment" provision) are set forth in the text accompanying n. 2, *infra.*

statutes in the majority of jurisdictions. Under Delaware's statute, as construed by prior decisions of this Court, the Claimant is time barred from receiving compensation for his 1973 injury because the carrier's medical payment in 1973 did not stem from a "feeling of compulsion" under the Act.

### A.

The statute of limitations in the original Delaware Workmen's Compensation Law of 1917 provided, as does the statute today, that claims for compensation would be barred unless the employer and employee reached an agreement or unless one of the parties appealed to the Board within a certain time after the accident. 29 *Del.Laws* c. 233, § 3193. However, the original statute differed significantly from today's version in that it also provided: "[w]here, however, payments of compensation have been made in any case, said limitation shall not take effect until the expiration of one year from the time of the making of the last payment." This original "last payment" provision appeared to allow any payment of compensation to toll the statute regardless of whether the payment was made under an agreement.

A 1921 amendment to the Act raised an issue as to how broadly the "last payment" provision could be construed. The amendment defined compensation to include "surgical, medical and hospital services, medicines and supplies...." 32 *Del.Laws* c. 186, § 4. Relying on this amendment, the Board ruled that payment of a medical benefit was a payment of compensation sufficient to toll the statute of limitations. *Bethlehem Shipbuilding Corp. v. Mullen,* Del.Super., 119 A. 314, 318 (1922). In reversing the decision of the Board, the Superior Court ruled that the amendment was not binding on the case because it was enacted after the events at issue had occurred. However, the court noted that "if the effect of [the 1921 amendment] is to fix a stamp of compensation upon all medical services furnished an injured employee by his employer ... then it must be considered as a material change in the then-existing law...." *Id.*

Perhaps in reaction to the interpretation given the statute by the Board, the General Assembly amended the Act in 1927 to clarify the scope of the "last payment" provision. The legislature rephrased the provision to read:

> Where payments of compensation have been made in any case *under an agreement approved by the Board or by an award of the Board,* no statute of limitations shall take effect until the expiration of two years from the time of the making of the last payment *for which a proper receipt has been filed with the Board.*

35 *Del.Laws* c. 192, § 2 (emphasis added). The amendment added three restrictions to the general principle that payments of compensation would toll the statute. Aside from payments made pursuant to an award of the Board, the only payments that would toll the statute were those (1) made under an agreement which was (2) approved by the Board, and for which (3) a proper receipt was filed with the Board. In light of this amendment, it could no longer be thought that the provision of medical services, standing alone, would constitute a payment of compensation sufficient to trigger the "last payment" provision.

The statute of limitations as it relates to this case has undergone only one significant change since 1927. In 1955, it was amended to extend the period for reaching an agreement from one to two years and to toll the statute for five years (instead of two) from the date of the last payment. 50 *Del.Laws* c. 339, §§ 17, 18. The relevant portions of the statute provide:

> (a) In case of personal injury, all claims for compensation shall be forever barred unless, within 2 years after the accident, the parties have agreed upon the compensation as provided in § 2344 of this title....
>
> (b) Where payments of compensation have been made in any case under an agreement approved by the Board or by an award of the Board, no statute of limitations shall take effect until the expiration of 5 years from the time of the making of the last pay-

ment for which a proper receipt has been filed with the Board.

19 *Del.C.* § 2361(a) and (b).[2]

## B.

■ The first reported decision to construe the statute in its current form, *Pusey v. Reed*, Del.Super., 258 A.2d 460 (1969), ruled that payment of a single medical bill did not meet the requirements of the "last payment" provision. The question arose in the context of a malpractice suit against an attorney who failed to appeal a decision of the Board which had dismissed the plaintiff's compensation claim as time barred. The court granted summary judgment against the plaintiff on the ground that the failure to appeal did not prejudice him. The court ruled that § 2361(b), the "last payment" provision, did not apply because the medical payment in question was not made under an agreement approved by the Board and because no receipt for the payment was filed with the Board. *Id.* at 462.

In 1972, the Superior Court followed *Pusey* in ruling that a compensation claim was time barred. In *Delaware Association of Police v. Donahue*, Del.Super., 298 A.2d 342 (1972), the employee had been injured in 1957 and had signed an agreement under which the employer agreed to pay for medical treatment until January 1959. In spite of the termination agreement, the carrier continued to pay for a drug treatment until December 1971. When it stopped paying, the plaintiff filed a claim with the Board. The court ruled that § 2361(b) did not apply because no receipt was filed for any drug payments between 1959 and 1971. Therefore, the claim was time barred. In so ruling, the court noted that:

> Delaware is a distinct minority in its treatment of medical payments in situations of this type. *Cf.* Larson's Workmen's *Compensation Law*, § 78.43(b) [now § 78.43(h)]. However harsh may be the result and however restrictive we may consider the statute, the legislature has unequivocally expressed its intent and it is for the legislature to change the statute.

*Id.* at 343.[3]

In 1975, this Court overruled *Pusey* and *Donahue* in a decision which ameliorated some of the harshness of § 2361(b). In *Starun v. All American Engineering Co.*, Del.Supr., 350 A.2d 765 (1975), the employer had provided the employee with continuous medical treatment for three years after the employee's work-related injury. When the employer stopped payments, the employee filed a compensation claim with the Board. The employee contended that the claim was timely under § 2361(b). The employer argued that that section did not apply because the parties had not entered into an agreement, and because no agreement had been approved by the Board as required by statute. Following *Pusey* and

**2.** Section 2344, referred to in subsection (a), provides in pertinent part:

> If the employer and the injured employee ... reach an agreement in regard to compensation or other benefits in accordance with this chapter, a memorandum of such agreement signed by the parties in interest shall be filed with the Board and, if approved by it, shall be final and binding unless modified....

**3.** Professor Larson's treatise, cited in the *Donahue* decision, states that the "great majority" of jurisdictions include medical payments as the kind of payments that toll the statute "on the theory that the furnishing of any kind of benefit required by compensation law indicates an acceptance of liability, and thus satisfies the policy of the 'last payment' clause." 3 A. Larson, *The Law of Workmen's Compensation* § 78.43(h) (1983).

The treatise then describes a trend toward treating even routine visits to an employer's medical department as sufficient to toll the statute, regardless of whether the benefits are required by compensation law or are provided by the employer on its own initiative. *Id.* In New York, for example, an "advance payment" of compensation tolls the statute. *N.Y.Work. Comp.Law* § 28 (McKinney Supp.1987). As long as the payment carries with it some recognition of liability, in the sense of an acknowledgment that the injury arose in the course of employment, the statute is tolled. *Schultz v. Voltro Distributors, Inc.*, Supr.Ct.App.Div., 92 A.D.2d 990, 461 N.Y.S.2d 487 (1983); *Pelloc v. Atlantic Beach Club*, Supr.Ct.App.Div., 66 A.D.2d 909, 410 N.Y.S.2d 724, *aff'd*, N.Y.Ct.App., 48 N.Y.2d 912, 425 N.Y.S.2d 91, 401 N.E.2d 213 (1978). In light of this trend, already well-established at the time of the *Donahue* decision, the Delaware statute appeared extremely harsh toward claimants.

*Donahue,* the Board and the Superior Court had dismissed the claim.

This Court, however, reversed the rulings of the Board and of Superior Court under the following analysis. First, in view of the fact that the employer's carrier paid the employee's medical expenses for three years, the Court found that "the only reasonable conclusion is that the carrier considered itself obliged to do so under the Act." *Id.* at 767. Since the employee accepted the benefits of the payments, the Court concluded that the parties had reached an implied agreement "in accordance with the provisions of" the Act. *Id.*

Second, the Court ruled that the obligation to file a memorandum of agreement with the Board as directed by § 2344 rested, at least in the first instance, on the employer and/or its carrier. To bar an employee from making a claim because no agreement was filed with the Board would be to allow the employer to benefit from its own default. Therefore, the Court refused to bar the claim even though a memorandum of agreement had not been filed with, and approved by, the Board as required by statute.

More recently, in *New Castle County v. Goodman,* Del.Supr., 461 A.2d 1012 (1983), this Court applied the *Starun* analysis to a situation in which an employer paid two medical bills of an employee—one nearly a year after the work-related injury. Restating the rule of *Starun,* the Court declared that "where the facts indicate that the employer or its carrier made a payment under a feeling of compulsion, then an agreement within the meaning of § 2361(b) ha[s] arisen." *Goodman,* 461 A.2d at 1013. The Court found that payments made to a third party, in part for treatment received a year after the injury, were evidence that the

employer or its carrier felt compelled to make such payments.

By application of the common law doctrine of agreements "implied in fact," this Court has recognized in *Starun* and *Goodman* that parties may enter into an agreement as to compensation without a formal filing with the Board. The Court has also come close to writing the filing requirement out of the statute by placing on the employer alone the burden of filing a memorandum of an implied agreement with the Board.

However, in order to find an implied agreement, the finder of fact must first ascertain that the employer "considered itself obliged" or "felt compelled" under the Act to make the payment.

### C.

■ In this case, there is substantial evidence to support the Board's finding that neither the County nor its carrier felt compelled under the Act when the carrier paid Claimant's 1973 medical bill. The Board found credible the testimony of the carrier's representative that the carrier did not feel compelled to provide benefits because the Claimant had not lost time from work due to the injury.[4] Also, the representative's testimony revealed that the carrier believed that such payments did not give rise to an agreement as to compensation which obligated a carrier to make payments.[5] In light of this substantial evidence, neither the Superior Court nor this Court are in a position to disturb the finding of fact of the Board. *M.A. Hartnett, Inc. v. Coleman,* Del.Supr., 226 A.2d 910, 912 (1967).

■ The Claimant argues that the carrier felt compelled to pay the bill for his

---

**4.** The carrier's reliance on the fact that the Claimant had not missed work was well-founded. Delaware's "waiting period" provision for compensation claims, 19 *Del.C.* § 2321, states, in relevant part, that "[n]o compensation shall be paid for any injury which does not incapacitate the employee for a period of 3 days from earning full wages, and compensation shall begin on the fourth day of incapacity after the injury. . . ." *See also Smith v. Feralloy Corp.,* Del. Supr., 460 A.2d 516 (1983).

**5.** The *Pusey* and *Donahue* decisions, discussed *supra,* support this view. It was not until the *Starun* decision in 1975 that this Court declared that medical payments could give rise to an implied agreement obligating an employer or its carrier to pay compensation. The single payment here at issue was made in 1973.

treatment because the payment was made pursuant to an insurance contract with the County. While it could be said that the carrier was "compelled" in the sense that it had contracted with the County to pay such bills, there is evidence that the carrier did not feel obliged or compelled "under the Act." *Starun* at 767.[6] Moreover, a contract between an employer and its carrier to provide benefits which are not required by the Act cannot create an agreement within the meaning of the Act. Therefore, even if the carrier had entered into an implied agreement with the Claimant under these circumstances, and even if a memorandum of such agreement had been filed with the Board, the agreement was not a workmen's compensation agreement and was not eligible to be "approved by the Board" as required by § 2361(b).

The finding of the Board that the carrier did not pay under a feeling of compulsion raises a question heretofore never directly addressed by this Court: i.e., does the fact that the employee in question had not missed work at the time that a payment of medical expenses was made, establish, as a matter of law, that the employer did not make that payment out of a feeling of compulsion under the Act? Although the Court found in *Starun* that the employer acted out of a sense of obligation, it did not address the significance of the fact that the employee did not miss any work due to the injury. Again, in the *Goodman* decision, the Court did not address the issue of whether an employer could be regarded as having felt compelled to make the payments under the statute when in fact the employee had not missed more than three days' work at the time the payments were made (and under the circumstances, the carrier had no obligation under the statute).

The statutory "waiting provision," 19 *Del.C.* § 2321, plainly states that "no compensation shall be paid for an injury that does not incapacitate the employee for a period of 3 days...." Applying § 2321, this Court recently held that a claimant must show that he was incapacitated for a period of three days in order to recover under the Act. *Smith v. Feralloy*, Del.Supr., 460 A.2d 516, 518 (1983). Similarly, no employer can be compelled or obliged to make payments under the Act until the requirements of § 2321 have been satisfied. We therefore hold that payments made by an employer to an injured employee or a third party when the employee has not missed at least three days' work due to the injury do not constitute payments made under a feeling of compulsion under the Act. Consequently, such payments cannot give rise to an implied agreement sufficient to trigger the provisions found in 19 *Del.C.* § 2361(b) which extend the running of the statute of limitations until five years after the last payment for which a proper receipt has been filed with the Board.

\* \* \*

For the reasons explained above, we affirm the decision of the Superior Court.

---

**6.** Although the *Goodman* decision rephrased the *Starun* test as an inquiry into whether the employer or its carrier acted under a "feeling of compulsion," without stating that these parties must be compelled by their obligations under the Act, the *Goodman* decision was intended to apply the rule of *Starun* and so should be interpreted in light of the more precise language in the earlier decision.