LISA TENAGLIA-EVANS, Employee/Appellant Below, Appellant,
v.
ST. FRANCIS HOSPITAL, Employer/Appellee Below, Appellee.
No. 230, 2006.
Supreme Court of Delaware.
Submitted: November 15, 2006.
Decided: December 11, 2006.
Before STEELE, Chief Justice JACOBS and RIDGELY, Justices.

ORDER
JACK B. JACOBS, Justice.
This 11th day of December 2006, upon consideration of the briefs of the parties and the record in this case, it appears to the Court that:
1. Lisa Tenaglia-Evans, the claimant-appellant, appeals from a Superior Court's opinion and order affirming the denial by the Industrial Accident Board (the "Board") of workers' compensation benefits. On appeal the claimant argues that: (1) the Board erred by not construing two previous payments for surgery as an "implied-in-fact" agreement for compensation; and (2) the Board's decision is not supported by substantial evidence. We find no merit to these arguments and affirm.
2. While employed by St. Francis Hospital ("St. Francis") as a registered nurse, Tenaglia-Evans suffered an injury on January 18, 1994 when attempting to bathe a patient. As a result of her injury, St. Francis agreed to pay workers' compensation benefits during various parts of l994 and 1995. In addition, a lump sum commutation payment was made in 1998. Tenaglia-Evans sought treatment for her injuries from 1994 through 2000 from various physicians. All documents relating to the injury describe the disability as a problem with Tenaglia-Evans' lower back. Notably missing from the medical records are complaints relating to her cervical spine.[1] No notation of a complaint about pain in her cervical spine appears in those records until 2000. That notation (in 2000) was made by Dr. Irwin Lifrak, who provided most of Tenaglia-Evans' medical care,[2] and who referred the Claimant to Dr. Bruce J. Rudin in 2000.
3. Tenaglia-Evans first saw Dr. Rudin in July 2001. Dr. Rudin diagnosed her as having severe cord compression at the C5-C7 level of her cervical spine. Based solely on what Tenaglia-Evans had told him, Dr. Rudin concluded that the cause of the injury was the 1994 accident at St. Francis. Dr. Rudin performed two surgeries: on August 7, 2001, and August 7, 2003. St. Francis paid the cost of both procedures, but there was no formal agreement or Board order requiring St. Francis to pay.
4. On April 12, 2004, Tenaglia-Evans filed a petition with the Board for compensation for permanent injury to her cervical spine. St. Francis denied that her 1994 work injury was the cause of her disability. A Board hearing followed.
5. At the hearing, Tenaglia-Evans testified on her own behalf. She also presented the testimony of her surgeon, Dr. Rudin. Tenaglia-Evans testified that she made continuous complaints about problems with her cervical spine, despite the total absence of any such complaints in her medical records until 2000. She admitted falling from a bridge in 1982, but otherwise denied any other prior injuries to her back or neck.[3] Dr. Rudin testified that based on what Tenaglia-Evans told him, he believed that the problems with her cervical spine were caused by the 1994 accident at St. Francis. Dr. Rudin did not review any of the Claimant's prior medical records. He admitted that if those records did not correspond with what Tenaglia-Evans told him, his opinion would likely change.
6. St. Francis presented testimony from Dr. Jerry Case, an orthopedic surgeon, and Tiffany Mendez, the claims adjuster who processed Tenaglia-Evans' claim. Dr. Case examined Tenaglia-Evans four times since the accident, and testified that "it was difficult to relate the cervical spine problems to the work injury that occurred in 1994."[4] Having reviewed Tenaglia-Evans' medical history, Dr. Case testified that it was devoid of complaints about her cervical spine. Mendez testified that the adjuster who authorized payment for the August 7, 2001 surgery had been fired for "poor performance" because she approved every claim. Mendez also testified that she approved the August 7, 2003 procedure, but only because she was following the lead of the previous adjuster. Mendez also testified that no document acknowledging a cervical injury appeared in her file.
7. Mendez also discussed two statements that were made by Tenaglia-Evans. These statements were recorded, transcribed and then inserted into the file. In the first statement, made on July 27, 1994, Tenaglia-Evans admitted suffering an injury while working in Philadelphia and receiving workers' compensation as a result of that injury. In her second statement, made on February 21, 1994, Tenaglia-Evans admitted to being in a motor vehicle accident in 1986 that resulted in a neck sprain and an inability to work for approximately one month.
8. The Board found Tenaglia-Evans' testimony to be "unreliable and inconsistent."[5] The Board also did not credit the testimony of Dr. Rudin, because he had not reviewed Claimant's medical records from 1994-2000 and because his ability to relate the injury to the work accident was based entirely on what Tenaglia-Evans had told him. The Board found both Dr. Case and Ms. Mendez to be credible. As a result, the Board found the evidence was insufficient to show that the 1994 accident caused Claimant's current cervical spine problems. The Board also rejected Tenaglia-Evans' argument that an implied agreement to pay compensation was created by reason of St. Francis having paid for the 2001 and 2003 surgeries.
9. Tenaglia-Evans appealed the Board's decision to the Superior Court. Affirming the Board's decision, the Superior Court found that the Board's findings were supported by substantial evidence.[6]
10. When reviewing an appeal from the Board, the limited role of this Court and the Superior Court is to determine whether the Board's decision is supported by substantial evidence and is free from legal error.[7] "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion."[8] It is well established that this Court does not sit as the trier of fact, rehear the case, weigh the evidence, make credibility determinations, or substitute its own judgment for that of the Board.[9] We do, however, review questions of law de novo.
11. Tenaglia-Evans' claims that the Board erred by failing to find an implied agreement for compensation. She argues that St. Francis' payment for both the 2001 and 2003 surgeries without objection is clear evidence of such an agreement.
12. An implied agreement to pay compensation may be found where the employer or its insurance carrier has previously paid medical expenses or compensation out of a "feeling of compulsion."[10] Simple payment of expenses is not enough; there must be a finding of "compulsion" on the part of the employer or its insurance carrier to pay the expenses.[11]
13. The record supports the conclusion that St. Francis did not feel compelled or otherwise obligated to pay Tenaglia-Evans' medical expenses. To the contrary, the record shows that the payments were made by mistake. Mendez testified that the first payment was authorized by a claims adjuster who was subsequently fired for carelessly authorizing payments. Mendez authorized the second surgery without investigation because she saw in the records that the same procedure was previously authorized.
14. Tenaglia-Evans contends that the Board's finding that the payments were made by mistake is not supported by substantial evidence because it was based on hearsay testimony. That argument lacks merit because Industrial Accident Board Rule No. 14(b) states:
The rules of evidence applicable to the Superior Court of Delaware shall be followed insofar as practical, however, that evidence will be considered by the Board which, in its opinion, possesses any probative value commonly accepted by reasonably prudent men in the conduct of their affairs. The Board may, in its discretion, disregard any customary rules of evidence and legal procedures so long as such a disregard does not amount to an abuse of discretion.
This Court has recognized that the Rules of Evidence do not strictly apply to administrative hearings. Rather, the agency may hear "all evidence which could conceivably throw light on the controversy."[12] Only when the hearsay is incompetent will the Board's reliance on such testimony be deemed an abuse of discretion.[13]
15. The Board's reliance on Mendez's testimony as to why the hospital's prior insurance claims adjuster had been fired did not amount to an abuse of discretion. The Board found Mendez to be a credible witness. Mendez was in a unique position to know why the prior claims adjuster was fired, because Mendez was assigned all of her predecessor's cases.
16. Tenaglia-Evans also argues that the Board's finding that the cervical spine problem was not caused by the 1994 accident was not supported by substantial evidence. We find, however, that the record clearly supports that finding. From 1994 through 2000, there were no notations in Tenaglia-Evans' physicians' records indicating any cervical spine problem. Dr. Rudin conceded that he had not reviewed the Claimant's medical records, and that his conclusion that the injury was related to the accident was based solely on what Tenaglia-Evans told him. Dr. Rudin's testimony was the only evidence presented to support a finding of causation. The Board was justified in not accepting Dr. Rudin's testimony. Instead, the Board accepted the testimony of Dr. Case, who had reviewed all of Tenaglia-Evans' records and had personally examined her on four different occasions since the 1994 accident.
17. Lastly, Tenaglia-Evans claims that the Board erroneously rejected her testimony, because of statements that she had made to St. Francis in 1994. She claims that these statements should not have been admitted because they were not properly authorized pursuant to D.R.E. 1002. As previously noted, the Board is not required strictly to comply with the rules of evidence. The actual conversations were tape recorded and could be produced if necessary. At no point did Tenaglia-Evans dispute the substance of those recordings. The Board acted within its discretion by not requiring production of the actual tapes.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.
NOTES
[1] Tenaglia-Evans v. St. Francis Hosp., IAB Hearing No. 1020433 ("Board Op.") at 10 (Jan. 26, 2005).
[2] Dr. Lifrak treated Tenaglia-Evans 37 times from May 2000 to June 2001.
[3] Board Op. at 3.
[4] App. to Appellant's Opening Br. at A122.
[5] Board Op. at 9.
[6] Tenaglia-Evans v. St. Francis Hosp., Del. Super., C.A. No. 05A-03-004 (May 1, 2006).
[7] Std. Distrib. v. Hall, 897 A.2d 155, 157 (Del. 2006).
[8] Saunders v. DaimlerChrysler Corp., 894 A.2d 407 (Del. 2006) (Order) (citing Histed v. E.I. DuPont de Nemours & Co., 621 A.2d 340, 342 (Del. 1993)).
[9] Std. Distrib. v. Hall, 897 A.2d at 157.
[10] McCarnan v. New Castle County, 521 A.2d 611, 613 (Del. 1987).
[11] New Castle County v. Goodman, 461 A.2d 1012, 1013 (Del. 1983) (holding that an implied agreement exists only "where the facts indicate that the employer or its carrier made a payment under a feeling of compulsion"); Starun v. All American Eng'g Co., 350 A.2d 765, 767 (Del. 1975) (holding that where the carrier continuously paid medical expenses for over three years, "the only reasonable conclusion is that the carrier considered itself obliged to do so under the act").
[12] Ridings v. Unemployment Ins. Appeal Bd., 407 A.2d 238, 240 (Del. 1979).
[13] Dixon v. Lower Kensington Envtl. Ctr., 1994 WL 380999 (Del. Super. Jul. 8, 1994).