Gary **ANDREASON,** Employee
Below, Appellant,

v.

**ROYAL PEST CONTROL,** Employer
Below, Appellee.

No. 185, 2013.

Supreme Court of Delaware.

Submitted: July 24, 2013.
Decided: Aug. 14, 2013.

---

**13.** *Cooke v. State,* 977 A.2d 803 (Del.2009).

**14.** *Stevenson v. State,* 782 A.2d 249, 258 (Del. 2001).

Walt F. Schmittinger, Esquire and Kristi Vitola, Esquire, Schmittinger and Rodriguez, Dover, Delaware, for appellant.

John W. Morgan, Esquire and Gregory P. Skolnik, Esquire, Heckler & Frabizzio, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

HOLLAND, Justice:

The employee-appellant, Gary Andreason ("Andreason"), appeals from a Superior Court judgment affirming two Industrial Accident Board (the "Board") decisions. The first Board decision awarded compensation to Andreason for his work-related knee and right shoulder injuries, but denied compensation for a separate and unrelated lower back injury. The second Board decision denied Andreason's reargument motion challenging the Board's denial of compensation for his lower back injury.

Andreason has raised several issues in this appeal. First, he argues that the Board erred as a matter of law when it determined that there was no implied agreement to compensate him for his lower back injury. In *Starun v. All American Engineering Co.*,[1] this Court held that an insurance carrier and a claimant may have an implied agreement obligating the insurance carrier to make payments on behalf of the claimant, if the insurance carrier made previous payments on the claimant's behalf out of a 'feeling of compulsion.'[2] Andreason argues that the feeling of compulsion doctrine was eliminated by a 1995 amendment to title 19, section 2321 of the Delaware Code. Alternatively, he argues that doctrine was abrogated by the enactment of title 19, section 2322(h). Finally, Andreason contends that title 19, section 2322(h) does not apply when compensation is paid as the result of a unilateral mistake.

We have concluded that all of Andreason's arguments are without merit. Therefore, the judgment of the Superior Court must be affirmed.

### *Andreason's Injuries*

Andreason worked for the employer-appellee Royal Pest Control ("Employer") as a technician for approximately six years. As a result of his work activities, Andreason suffered a right knee injury. It is undisputed by the Employer that the right knee injury is a compensable work injury, and Andreason's workers' compensation claim was accepted by the Employer. Andreason underwent two surgeries between 2008 and 2009 to alleviate the pain. Despite this, he had continued problems with the right knee.

In November, 2009, Andreason claims his knee "gave out" while he was walking down the stairs in his home, causing him to stumble and twist his body. As a result, Andreason alleged that he suffered injuries to his right shoulder and lower back. Andreason argued that the fall was facilitated by the weakened right knee, and thus all of the injuries were work related.

On November 16, 2009, approximately two weeks after his fall, Andreason visited his orthopaedic surgeon, Dr. Stephen Manifold ("Dr. Manifold"), for treatment related to the fall. At that time, Andreason did not complain of any lower back pain; he did, however, complain of right shoulder pain related to the fall. A later MRI revealed a partial tearing of Andreason's rotator cuff. Andreason returned to Dr. Manifold on November 23, 2009, for further shoulder treatment. Again, no mention of a lower back injury was made. Andreason never returned to Dr. Manifold's office after early December.

In December, 2009, Andreason was "scouting" for deer in the woods when he slipped on leaves. He felt a twinge in his back and his buttocks while attempting to prevent himself from falling. Andreason's primary care physician, Dr. Pollner, prescribed hydrocodone and bed rest.

A few weeks later, Andreason suffered severe pain and sought treatment from a VA hospital where the doctor indicated that Andreason had "blew his back out." On December 24, 2009, Andreason went to the ER at Christiana Hospital seeking further care. Andreason complained of back pain that had begun approximately three weeks prior to arriving at Christiana Hospital, and claimed that he had no other significant history of back problems. Dr.

---

**1.** *Starun v. All Am. Eng'g Co.,* 350 A.2d 765 (Del.1975).

**2.** *Id.* at 767.

Michael Sugarman recommended immediate surgery, which was performed on December 29, 2009. A second lumbar surgery was subsequently performed on July 22, 2010, to fuse the L4–5 and L5–S 1 discs.

### Procedural Background

Andreason's right knee injury occurred on April 6, 2008. The parties executed agreements acknowledging this injury. On August 31, 2010, Andreason filed a Petition to Determine Additional Compensation Due, alleging that additional injuries to his right shoulder and low back were causally related to the right knee injury because the weakened right knee facilitated an injurious fall. Andreason alleged the fall to have happened in November, 2009. The Employer denied that a fall had ever occurred.

On December 20, 2010, the Industrial Accident Board held a hearing on Andreason's Petition. On January 21, 2011, the Board issued a decision finding that the shoulder injury was causally related to the right knee injury, but that the lower back injury was non-work related, and thus non-compensable. The Board heard conflicting testimony from Drs. Manifold and Sugarman (for Andreason) and Dr. Jerry Case (for the Employer) regarding the cause of Andreason's lower back injury. The Board accepted Dr. Case's testimony that the low back injury was related to the hunting incident.

On February 8, 2011, Andreason filed a Motion for Reargument based on newly-discovered evidence that the Employer's insurance carrier, Chartis Insurance Company ("Chartis"), had been making payments on Andreason's lower back medical bills. On October 11, 2011, the Board held an evidentiary hearing to determine whether Chartis' payment of medical expenses related to the lower back treatment created an implied agreement for compensability of the low back injury.

The hearing established that after Andreason's two surgeries, Chartis paid $18,667.30 to Christiana Care Hospital for his first operation. A claims adjuster for Chartis testified that she approved that payment out of a mistaken belief that the surgery was related to Andreason's earlier, compensable knee injury. Only later did she discover, during a routine audit of Andreason's case, that his lower back injury was unrelated to his compensable knee injury. The adjuster identified forty other bills totaling $33,050 that she (on behalf of Chartis) had mistakenly authorized for payment to third parties for their medical treatment of Andreason's lower back injury.[3]

On March 14, 2012, the Board applied the *Starun*[4] legal standard, as explained in *Tenaglia–Evans*,[5] and issued an Order finding that the bills for the lower back were paid by mistake and not under a feeling of compulsion. Andreason moved for reargument. In that motion, he contended that his lower back injury was compensable, because his case differed factually from those that were extant in *Tenaglia–Evans v. St. Francis Hospital.*[6]

---

3. Christiana Care Hospital later refunded the $18,667.30 payment to Chartis. Chartis has not been otherwise reimbursed for any portion of the $33,050 that it mistakenly paid out to other third parties.

4. *Starun v. All Am. Eng'g Co.,* 350 A.2d 765 (Del.1975).

5. *Tenaglia–Evans v. St. Francis Hosp.,* 913 A.2d 570, 2006 WL 3590385 (Del. Dec. 11, 2006) (table).

6. *Id.*

The Board disagreed and denied his reargument motion.[7]

On March 30, 2012, Andreason appealed the Board's decision to the Superior Court. On March 19, 2013, the Superior Court affirmed the March 14, 2012 Order from the Board. The Superior Court also affirmed the Board's ruling that title 19, section 2322(h) of the Delaware Code did not abrogate the "feeling of compulsion" doctrine created by this Court more than forty years ago.[8]

### Chartis' Bill Payment

All of the issues in this appeal are related to the legal significance of the lower back bills that were paid by Chartis on behalf of the Employer. At the October 11, 2011, evidentiary hearing, the Board heard testimony from Nesta Henlon ("Henlon"), an insurance adjuster at Chartis for twenty-five years. Henlon testified that Chartis' practice is to mark files "A" for accepted, "D" for denied, or "P" if no formal decision was yet made.

Henlon handled Andreason's claim from its inception. She testified that Claimant's filed was marked with an "A" when it was only his knee injury, but that she should have, but did not, re-code the file with a "P" to help distinguish between the compensable (knee and shoulder) and noncompensable (low back) injuries. The failure to re-code Andreason's file facilitated large payments for Andreason's non-compensable low back injury.

On February 1, 2011, Henlon discovered her error and immediately requested that Christiana Care reimburse Chartis for the mistaken payment of $18,667.30, which the facility promptly repaid. Continued investigation by Henlon discovered an additional forty bills mistakenly paid to other third parties between March 2010 and October 2010 related to Andreason's non-compensable low back injury. None of those other third parties have made repayments.

### "Feeling of Compulsion" Doctrine

Andreason's first argument on this appeal is that the Board and Superior Court erred by applying the common law "feeling of compulsion" doctrine to his case. According to Andreason, the doctrine was abrogated by title 19, section 2322(h) of the Delaware Code. In support of that assertion, Andreason argues the lynchpin of the doctrine was removed by the General Assembly's 1995 amendment to title 19, section 2321 of the Delaware Code.

The concept of a "feeling of compulsion" that must underlie a payment by a carrier in order to constitute an admission of responsibility for the payment of compensation was recognized by this Court in 1975 in *Starun v. All American Engineering Co.*[9] In that case, the claimant was injured in a compensable work-related accident, and the insurance carrier paid the claimant's workers compensation bills without delay for the three years following the incident.[10] When the carrier subsequently denied further payments, the claimant filed a petition seeking additional medical

---

7. *Andreason v. Royal Pest Control*, Hearing No. 1323493, slip op. at 7 (IAB Mar. 14, 2012) ("The Board believes this case is comparable to *Tenaglia–Evans* and similarly concludes that the payments were not made under the necessary feeling of compulsion. Therefore, the Board finds no implied agreement to accept the low[er] back bills as compensable.").

8. *Starun v. All Am. Eng'g Co.*, 350 A.2d 765 (Del.1975).

9. *Starun v. All Am. Eng'g Co.*, 350 A.2d 765 (Del.1975).

10. *Id.* at 766–67.

treatment.[11] The Board and Superior Court determined that the claimant's statutory period for filing his claim had tolled, because no formal agreement agreeing to the claimant's care was formalized.[12] This Court determined that the result was "unjust and at odds with the [Workers' Compensation] Statute."[13] We held that "[g]iven the fact that Claimant was injured in an industrial accident and that the Carrier paid his medical expenses for more than three years, the only reasonable conclusion is that the Carrier considered itself obliged to do so under the Act."[14] Furthermore, the claimant's acceptance of the benefit of the payments constituted "an agreement in regard to compensation" pursuant to the workers' compensation act.[15]

In *New Castle County v. Goodman,*[16] the employee, after being injured in a work-related accident, subsequently missed three consecutive days of work.[17] The employer's insurance carrier paid two medical bills in connection with the injury.[18] The employee filed a petition four years later for disabilities associated with the work injury.[19] The question before this Court (as in *Starun* ) was whether an agreement was reached between the claimant and carrier for compensation due (which would delay the two year statute of limitations until five years after the final workers' compensation bill was paid) or whether the claim was denied from its inception (which would trigger a two year filing period).[20] This Court's discussion of *Starun* summarized the law established in that decision:

> In *Starun* ... this Court had the occasion to construe § 2361(b) and held that the payment of an employer's medical expenses by the carrier for the employee for three years constituted an agreement within the meaning of § 2361(b). The decision in *Starun* turned on our conclusion that where the facts indicate that the employer or its carrier made a payment under a feeling of compulsion, then an agreement within the meaning of § 2361(b) had arisen. In that the *Starun* decision makes it clear that each case is bottomed on its own facts, the narrow issue before us is whether the facts of the instant case show that payment was made under a feeling of compulsion.[21]

In *Goodman,* this Court held that an agreement had been reached between the carrier and the claimant because the "evidence [indicated] that the employer or its carrier felt compelled to make the payments, and as such the five year limitations' period of § 2361(b) was triggered."[22]

In *Goodman,* this Court also, for the first time, was presented with the argu-

---

**11.** *Id.* at 767.

**12.** *Id.*

**13.** *Id.*

**14.** *Id.*

**15.** *Id.* The fact that payments were made for three years without disagreement demonstrated that the carrier felt obligated to pay, and that the payments made were not gratuitous in nature. *Id.*

**16.** *New Castle County v. Goodman,* 461 A.2d 1012 (Del.1983).

**17.** *Id.* at 1012–13.

**18.** One bill was for treatment immediately after the incident. A second treatment occurred almost one year after the incident. The carrier paid for both treatments. *Id.* at 1013.

**19.** *Id.*

**20.** *Id.*

**21.** *Id.*

**22.** *Id.* at 1014.

ment regarding the then-existing three day waiting period to receive workers' compensation.[23] Previously, under title 19, section 2321, no workers' compensation was to be paid to the employee unless the employee was rendered incapable of earning full wages for three days.[24] In *Goodman*, this Court construed this statute to mean that an employee did not have to miss the first three days after the injury (i.e., they could later miss three days) to satisfy the purposes underlying the statute.[25]

In *McCarnan v. New Castle County*,[26] the claimant injured his right wrist in 1973, but received only limited treatment, which resulted in one medical bill that was paid by the employer's carrier.[27] The claimant missed no work at that time.[28] Two years later, the claimant reinjured the wrist and received more treatment.[29] The claimant underwent wrist surgery in 1976, and the employer's new insurance carrier paid temporary total disability and had the claimant execute a receipt and an agreement as to that compensation.[30] A subsequent surgery was performed in 1980, and an agreement for compensation was again entered into.[31] In 1981, a third unsuccessful surgery was performed.[32]

In 1982, the claimant in *McCarnan* filed a petition with the Board seeking additional compensation due.[33] The disagreement between the parties again focused on whether the two-year or five-year statute of limitations would apply to the petition.[34] This Court affirmed the Board's decision that record evidence supported the conclusion that "the carrier did not feel compelled to provide benefits because the Claimant had not lost time from work due to the injury [in 1973]. Also, the representative's testimony revealed that the carrier believed that such payments did not give rise to an agreement as to compensation which obligated a carrier to make payments."[35] In *McCarnan*, despite the fact that the employer *later* entered into an agreement with the claimant, this Court determined that evidence existed to demonstrate that the employer, at the time its carrier paid the original bill in 1973, was not doing so out of a "feeling of compulsion."[36] Thus, the record supported the Board's conclusion that the two-year statute of limitations would apply from that time, and that the claimant's subsequent petition was untimely.

In *McCarnan*, this Court was also presented with a novel question: "does the fact that the employee in question had not missed work at the time that a payment of medical expenses was made, establish, as a matter of law, that the employer did not make that payment out of a feeling of compulsion under the [Workers' Compensation] Act?"[37] This Court answered the

23. *Id.*

24. *Id.*

25. *Id.* at 1014–15.

26. *McCarnan v. New Castle County*, 521 A.2d 611 (Del.1987).

27. *Id.* at 612.

28. *Id.*

29. *Id.*

30. *Id.*

31. *Id.*

32. *Id.*

33. *Id.*

34. *Id.* at 612–13.

35. *Id.* at 616.

36. *Id.* at 617.

37. *Id.*

question in the affirmative, holding that payments made when the employee had not yet missed three days of work cannot "constitute payments made under a feeling of compulsion under the Act." [38]

### Andreason's McCarnan Interpretation

In this case, Andreason argues that this Court's decision in *McCarnan v. New Castle County* stands for the proposition that the "three day rule of § 2321[w]as the basis for the 'feeling of compulsion' concept in *Starun.*" Section 2321 previously required that an employee forego three days of full wages before workers compensation was due under the Workers' Compensation Act. In 1995, the legislature amended section 2321. Section 2321 remained largely the same, except under the current iteration of the statute, the three day "waiting period" was eliminated.

Under the current version of section 2321, "benefits shall be paid from the 1st day of injury." Thus, because Andreason argues that the "feeling of compulsion" doctrine was necessarily derived from this three day waiting rule, "[w]ith the elimination of the 'three day rule' for medical treatment expenses, the only justification that had ever been proffered for the 'compulsion' argument ceased to exist." A plain reading of this Court's prior decisions refutes that argument.

 This Court's decisions in *Starun* and *Goodman* did not rely on the three-day waiting period in determining whether an implied agreement had been created between the claimant and the carrier. Instead, as we said in *Goodman,* the decision as to whether an employer felt contractual-

ly compelled to pay, "is bottomed on its own facts." [39] Thus, in an ordinary case where there is a dispute as to whether the carrier believed itself compelled to pay, the issue is resolved by the Board on the facts of the case, taking into account, obviously, all of the record evidence proffered and testimony adduced. This conclusion is made clear by this Court's acknowledgement in *McCarnan* that it had not previously addressed the compulsion issue as it related to the three-day waiting period. However, in that case, this Court did hold, as a matter of law, that when a payment is made before an employee had missed three days of work, the payment is necessarily gratuitous. [40]

In *McCarnan,* we made no mention of the ordinary fact-based disputes that the Board must resolve when a petitioner claims an implied agreement regarding compensation has been reached. Accordingly, the bright line rule created in *McCarnan* did not abrogate the *Starun* and *Goodman* factual inquiries. This conclusion is compelled by *TenagliaEvans v. St. Francis Hospital.* [41]

### Tenaglia–Evans v. St. Francis Hospital

In *Tenaglia–Evans v. St. Francis Hospital,* we affirmed the Board's conclusion that payment by mistake for surgeries in 2001 and 2003, even without objection from the carrier, was not clear evidence of an implied agreement. [42] Importantly, this Court summarized the law on implied agreements in this context as follows: "An implied agreement to pay compensation may be found where the employer or its

---

**38.** *Id.*

**39.** *New Castle County v. Goodman,* 461 A.2d 1012, 1013 (Del.1983).

**40.** *McCarnan v. New Castle County,* 521 A.2d at 617.

**41.** *Tenaglia–Evans v. St. Francis Hosp.,* 913 A.2d 570, 2006 WL 3590385 (Del.2006) (table).

**42.** *Id.* at *2.

insurance carrier has previously paid medical expenses or compensation out of a 'feeling of compulsion.' Simple payment of expenses is not enough; there must be a finding of 'compulsion' on the part of the employer or its insurance carrier to pay expenses."[43] In affirming the Board's decision, we held that the payments were made by mistake, as supported by the record, and without more, no implied agreement could be reached.[44]

Our holding in *Tenaglia–Evans* demonstrates that Andreason's position in this appeal as to the meaning of the common law compulsion doctrine, is incorrect. Andreason asserts that the underpinning for the "feeling of compulsion" doctrine was the previously-enacted three-day waiting period. This Court's pronouncements of the rule in *Tenaglia–Evans,* written long after the General Assembly abandoned the three-day waiting period, completely refutes Andreason's argument.

### Feeling of Compulsion Doctrine Undisturbed

Accordingly, in 1995, when the General Assembly amended section 2321 to eliminate the three-day waiting period for a claimant to receive workers' compensation benefits, this Court's jurisprudence was unaffected, except for the elimination of the bright line test adopted in *McCarnan* that held that any payments before the three-day period explicitly indicated that the payments were gratuitous. *Tenaglia–Evans* reflects our determination that the common law rules regarding implied agreements are unaffected by that change in section 2321. Therefore, Andreason's claim that the foundational underpinning of the "feeling of compulsion" doctrine has been eliminated by the removal of the three-day rule, in section 2321, is without merit.

### Title 19, section 2322(h)

Alternatively, Andreason argues our common law "feeling of compulsion" jurisprudence has been abrogated by the General Assembly's adoption of title 19, section 2322(h) of the Delaware Code. Section 2322(h) reads in its entirety, as follows:

(h) An employer or insurance carrier may pay any health care invoice or indemnity benefit without prejudice to the employer's or insurance carrier's right to contest the compensability of the underlying claim or the appropriateness of future payments of health care or indemnity benefits. In order for any provision or payment of health care services to constitute a payment without prejudice, the employer or insurance carrier shall provide to the health care provider and the employee a clear and concise explanation of the payment, including the specific expenses that are being paid, the date on which such charges are paid, and the following statement, which shall be conspicuously displayed on the explanation in at least 14–point type: This claim is IN DISPUTE and payment is being made without prejudice to the Employer's right to dispute the compensability of the workers' compensation claim generally or the Employer's obligation to pay this bill in particular.

(1) Partial payment of the uncontested portion of a partially contested health care invoice shall be considered a payment without prejudice to the right to contest the unpaid portion of a health care invoice, provided the above notice requirements are met.

(2) No payment without prejudice made under a reservation of rights pur-

---

**43.** *Id.* at *3 (citations omitted).

**44.** *Id.*

suant to this subsection shall be subject to return, recapture or offset, absent a showing that the claim for payment was fraudulent.

(3) No payment without prejudice that complies with the above is admissible as evidence to establish that the claim is compensable.

(4) No payment without prejudice that complies with the above shall extend the statute of limitations unless the claim is otherwise determined by agreement or the Board to be compensable.

On appeal to the Superior Court, Andreason argued for the first time that the relevant legal test was not the standard set forth in *Tenaglia–Evans*, but rather the test provided under title 19, section 2322(h) (the "section 2322(h) claim"). He argued that that statute, enacted in 2007 and shortly after this Court decided *Tenaglia–Evans*, supplanted *Tenaglia–Evans* as the relevant test. The Superior Court noted that Andreason had "cite[d] to no authority" to support his section 2322(h) claim, and affirmed the Board's finding that Andreason's lower back injury was not compensable.

On appeal to this Court, Andreason reiterates his section 2322(h) claim, arguing that section 2322(h) supplanted *Tenaglia–Evans* as the relevant legal standard. He further contends—for the first time in this appeal—that even if Chartis made a unilateral mistake in paying for his lower back injuries, that mistake does not excuse Chartis from its contractual obligation to pay for his medical expenses (the "unilateral mistake claim"). Royal submits that Andreason waived his unilateral mistake claim.

■ This Court has consistently held that "the common law is not repealed by statute unless the legislative intent to do so is plainly or clearly manifested." [45] "[R]epeal by implication is disfavored, and is deemed to occur only 'where there is fair repugnance between the common law and the statute, and both cannot be carried into effect.' " [46] As the Superior Court correctly noted, it does not appear that section 2322(h) was meant to abrogate the common law feeling of compulsion rule for two reasons. First, that statutory enactment made no reference to this purpose. Second, the statute was signed into law one month after *Tenaglia–Evans* was decided, which means the legislation was considered before the *Tenaglia–Evans* opinion was issued, and cannot logically be read as having been enacted to modify that case.

### Section 2322(h) is Inapplicable

A statute is unambiguous when "there is no reasonable doubt as to the meaning of the words used and the Court's role is then limited to an application of the literal meaning of the words." [47] Section 2322(h) is plainly unambiguous in its intent. Section 2322 is designed to provide an employee notice that a claim has been denied, presumably so he may properly contest the determination. The section exists to allow a carrier the opportunity to make payments on behalf of an employee, but explicitly reserve the right to later challenge those payments as being unrelated. This operates to benefit the workers' compensation system as a whole, because it provides for swift payments, which is what the system encourages, but notifies all parties that the claim being paid is not final

---

**45.** *A.W. Fin. Servs., S.A. v. Empire Res., Inc.,* 981 A.2d 1114, 1122 (Del.2009) (citations omitted).

**46.** *Id.*

**47.** *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.,* 492 A.2d 1242, 1246 (Del.1985).

and is subject to withdrawal. Section 2322 does not provide or imply that when a carrier mistakenly pays a bill, an employer is subsequently bound by section 2322 for the entirety of the claimant's treatment.

Because the common law feeling of compulsion doctrine has not been abrogated, we must turn to the common law rules to decide if the Superior Court properly rejected Andreason's appeal. The "feeling of compulsion" doctrine has already answered the question of clearly mistaken payments. *Tenaglia–Evans* specifically holds that a mistaken payment does not bind a carrier on the issue of accepted responsibility to pay compensation for an employee's injury. Under Andreason's reading of section 2322, even a carrier's mistaken payment would *ipso facto* make the carrier/employer liable for all future payments related to a non-compensable injury even though no such liability would otherwise exist. This would be an absurd result that has no textual basis in the statute.[48]

### Mistaken Payment Established

■ The factual question to be reviewed in this appeal is whether the Board's determination that a mistaken payment existed was supported by the record. "On appeal from a decision of an administrative agency the reviewing court must determine whether the agency ruling is supported by substantial evidence and free from legal error."[49] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[50] "It means more than a scintilla but less than a preponderance of the evidence."[51]

The record evidence, as determined by the Board, supports the conclusion that the lower back payment was mistakenly made. The Board accepted Henlon's (Chartis' adjuster) explanation that the file, having been marked as "A" meant only that Andreason's knee and shoulder injuries were accepted as compensable workers' compensation injuries. Chartis immediately investigated the matter upon discovery of the mistake and sought repayment from the providers who were wrongfully paid.

Andreason does not challenge the Board's factual determination of a mistaken payment. Instead, he argues that the statute creates automatic liability when section 2322(h) has not been followed. However, as explained in this opinion, section 2322(h) does not have any applicability to this mistaken payment case.

■ In this case, the Board correctly applied the *Tenaglia–Evans* legal test and properly found that the instant facts were analogous to those in *Tenaglia–Evans*. The record reflects that Chartis (through its adjuster) made payments on Andreason's lower back injury only by reason of a mistake, not from any "feeling of compulsion" that Chartis was obligated to do so. The Board's finding that no implied agreement existed between Andreason and Chartis, and that Andreason's lower back injury was not compensable, is supported by substantial evidence. Therefore, we hold that the Superior Court properly affirmed the Board's factual findings.

### Unilateral Mistake

Finally, Andreason argues that even if section 2322(h) is not applicable, the

---

48. *Reddy v. PMA Ins. Co.,* 20 A.3d 1281, 1287–88 (Del.2011).

49. *Stoltz Mgmt. Co. v. Consumer Affairs Bd.,* 616 A.2d 1205, 1208 (Del.1992).

50. *Streett v. State,* 669 A.2d·9, 11 (Del.1995) (citation omitted).

51. *Noel–Liszkiewicz v. La–Z–Boy,* 68 A.3d 188, 191 (Del.2013).

Board's decision to allow for reformation pursuant to a unilateral (as opposed to a mutual) mistake is inconsistent with Delaware law. This argument fails for two reasons. First, "unilateral mistake" was recognized as the controlling doctrine and applied by this Court in *Tenaglia–Evans*. There, we implicitly accepted that the carrier's unilateral mistake was sufficient to rebut the argument that an implied agreement existed. Second, and more importantly, the Employer correctly argues that this case is not about reformation; rather, it is one of contract formation. The Employer is not seeking to reform an agreement to cease payments. Instead, the Employer's argument has consistently been that no contract exists. Our holding in Tenaglia–Evans supports the Employer's position. Therefore, Andreason's final argument is also without merit.

### *Conclusion*

The judgment of the Superior Court is affirmed.

